UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————x

JANE DOE,

      Plaintiff,

                                       Case No.: 18-cv-1769

v.

SOLERA CAPITAL LLC and MOLLY
ASHBY, jointly and severally,

      Defendants.

-------------------------------------------------------------x


# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF DOE'S MOTION TO FILE UNDER PSEUDONYM, IN EXCEPTION TO FRCP 10(a)


MIRER, MAZZOCCHI, & JULIEN PLLC
150 Broadway, 12th Floor
New York, NY 10038
(212) 231-2235
*Attorneys for Plaintiff/Cross Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

Preliminary Statement .....................................................................................................1

Background.......................................................................................................................1

Legal Standard ................................................................................................................3

Argument .........................................................................................................................4

    A.  THE PUBLICATION OF PLAINTIFF'S NAME PRESENTS A
         LIKELIHOOD THAT HER NEW IDENTITY WILL BE DISCOVERED
         BY HER ABUSER—SUCH DISCOVERY POSES A SPECIAL RISK
         OF BODILY HARM, WHICH RISK HAS BEEN RECOGNIZED AS
         SUFFICIENT TO WARRANT FILING UNDER PSEUDONYM ...... ..........................5

           Particularized Risk Of Physical Harm Has Been Found To Outweigh
         Countervailing Interests.............................................................................................5

           Plaintiff's Identity Remains Unknown To Her Abuser And Her Fear Is
         Sufficiently Particularized To Support Filing Under Pseudonym .......................6

           DV Victim's Fears Should Be Given Particular Credence As
         Reasonable Assessments Of The Threat.................................................................8

    B.  THERE IS A COMPELLING PUBLIC INTEREST IN PROTECTING
         DV VICTIMS AND DV VICTIMS HAVE A COMPELLING INTEREST
         IN PRIVACY THAT HAS BEEN FOUND TO OUTWEIGH THE
         PUBLIC INTEREST IN OPEN RECORDS .....................................................9

    C.  THE PUBLIC INTEREST IN DISCLOSURE HERE IS NOT GREAT. .............................11

    D.  DEFENDANTS ARE NOT PREJUDICED BY PLAINTIFF
         PROCEEDING ANONYMOUSLY.................................................................11

    E.  THE TEN FACTORS WEIGH OVERWHELMINGLY IN FAVOR OF
         NONDISCLOSURE OF PLAINTIFF'S IDENTITY .......................................13

    F.  LESSER INTERESTS HAVE BEEN FOUND BY COURTS
         SUFFICIENT TO PERMIT PLAINTIFFS TO PROCEED UNDER
         PSEUDONYM .................................................................................................16

    G.  REQUIRING DV VICTIMS TO FACE THREAT OF THE DISCLOSURE
         OF THEIR NEW IDENTITY/LEGAL NAME IN ORDER TO
         VINDICATE THEIR RIGHTS TO BE FREE OF DISCRIMIATION AS

DV VICTIMS WOULD UNDERMINE THE PURPOSE OF THE DV
DISCRIMINATION LAW AND CHILL ENFORCEMENT ................................................. 16

Conclusion ............................................................................................................................................. 17

# TABLE OF AUTHORITIES

*Doe v. Evans,* 202 F.R.D. 173 (E.D. Pa. 2001) .............................................................................11

*Doe v. Hallock,* 119 F.R.D. 640, 1987 U.S. Dist. LEXIS 13258 ....................................................6

*Doe v. Individuals*, 561 F. Supp. 2d 249, 2008 U.S. Dist. LEXIS  48749 ...................................13

*Doe No. 2 v. Kolko,* 242 F.R.D. 193, 2006 U.S. Dist. LEXIS 80859...........................................12

*Doe v. Penzato,* No. CV10-5154 MEJ, 2011 WL 1833007 (N.D. Cal. May 13, 2011) ...............12

*Doe v. Shakur,* 164 F.R.D. 359 (S.D.N.Y. Jan. 22, 1996)...................................................5, 6, 11

*Doe v. Smith*, 105 F. Supp. 2d 40 (E.D.N.Y. 1999) ........................................................................6

*Doe v. Stegall,* 653 F.2d 180 (5th Cir.1981) ...........................................................................6, 13

*Doe v. United States Dep't of State*, 2015 U.S. Dist. LEXIS 173937 .............................................6

*Doe v. United Services Life Ins. Co.,* 123 FRD 437 (S.D.N.Y. Dec. 13, 1988) .....................13, 16

*Doe v. Szul Jewelry, Inc.,* 2008 N.Y. Misc. LEXIS 8733, 2008 NY Slip Op 31382(U)...............14

*EW v. New York Blood Ctr.,* 213 F.R.D. 108 (E.D.N.Y. 2003)...............................................12, 16

*Javier H. v. Garcia-Botello*, 211 FRD 194 (W.D.N.Y. Nov. 5, 2002)............................................6

*K.D. v. City of Norwalk*, 2006 U.S. Dist. LEXIS 42639, 2006 WL 1662905 ...............................13

*Michael v. Bloomberg L.P.*, No. 14-CV-2657 (TPG), 2015 U.S. Dist. LEXIS 16683, 2015 WL
585592 (S.D.N.Y. Feb. 11, 2015) ...................................................................................................4

*Plaintiff B v. Francis*, 631 F.3d. 1310 (11th Cir. Fla. Feb. 1, 2011) ...............................................6

*Plaintiffs #1-21 v. Cnty. of Suffolk,* 138 F. Supp. 3d 264, 2015 U.S. Dist. LEXIS 140485 ...........4

*Reynolds v. Fraser,* 5 Misc. 3d 758 (Sup. Ct., N.Y. Co., 2004).....................................................9

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) ....................................3, 4, 13

STATUTES

*Address Confidentiality/Family Court* (S.2113-B Saland/A.7843-A Weinstein) Signed: 1995 Chapter 388 Effective: October 31, 1995 Amends: Family Court Act §154-b ............................ 10

*Confidentiality of Voter Registration Records (*A.7793-A Paulin/S.6749 Savino) Signed: October 23, 2017 Chapter 396 Effective: October 23, 2017 Amends: Election Law §5-508 .................... 10

*Legal Name Change Protection* - A.2242 Bronson/S.5240 Savino  Signed: September 22, 2015   Chapter 241 Effective: September 22, 2015 Amends: Civil Rights Law §64-a ................ 10

*NYS Address Confidentiality Program* (A.628-A Weinstein/S.5293 Ball) Signed: 2011 Chapter 502 Effective: June 23, 2012 ....................................................................................................... 10

RULES

*Fed. R Civ. P 10(a)*) ............................................................................................. 1, 3, 4, 5, 11, 13

## PRELIMINARY STATEMENT

By this motion plaintiff Jane Doe seeks to continue to proceed in this case under the pseudonym Jane Doe.   Prior to filing plaintiff presented a motion to proceed as Jane Doe and that request was granted based on her status as a victim of domestic violence who underwent a name change in order to protect her safety after a life threatening battery, but who remains a target of her abuser. The purpose of filing as Jane Doe was to protect her new identity, as plaintiff fears that should her identity be revealed she will face renewed risk of life threatening harm from her abuser.  This Court requested plaintiff file the instant motion during a pre-motion conference on plaintiff's request to file a Motion to Dismiss Defendants' Counterclaims.

For the reasons stated below, plaintiff requests the Court continue to allow her to maintain her anonymity in this action. This case presents the rare circumstances where the privacy interests of the plaintiff and threat of irreparable harm to her outweigh the public interest in open courts and the defendant's interest in having the identity of their accuser publically known. As discussed in further detail below, plaintiff respectfully requests that the court exercise its discretion under the balancing afforded under FRCP10 (a) to allow her to proceed in a manner that protects her health and safety as a DV victim who remains under threat. Should the Court deny plaintiff's motion, plaintiff will be required to make an impossible Hobson's choice between her physical safety and vindicating her rights.

## BACKGROUND

Victims of Domestic Violence (DV) have suffered injury from those with whom they shared a personal relationship.  Domestic violence includes behaviors that physically harm, arouse fear, prevent a partner from doing what they wish or force them to behave in ways they do not want. It includes the use of physical and sexual violence, threats and intimidation, emotional abuse and economic deprivation.  The specifics of the abuse deserve to be protected,

not only because they are highly sensitive and personal but because the continuing danger DV victims face from their abusers which include stalking after the victim leaves are real and at the root of New York State and Local Domestic Violence statutory and administrative frameworks.

In the instant case it is not contested that plaintiff is a victim of domestic violence from her ex-husband who endangered her life.  Plaintiff was hired by defendant Solera at the request of a program which seeks to find jobs for victims of domestic violence.  It is not contested that the abuser is still trying to locate her.  Indeed while plaintiff was employed by Solera as part of a plan to protect her identity she legally changed her name in 2015.

Notwithstanding the name change plaintiff remains in danger from her abuser as he continues to try to find her.  Although plaintiff has changed her name, she is still a victim of domestic violence, and must always remain vigilant that her abuser will locate her and attempt to harm her again.

As social science research has shown, often, it is when a victim "escapes" her abuser, that the danger intensifies because the abuser feels a loss of control over the victim. Abusers frequently continue to stalk, harass, threaten, and try to control the victim even after the victim escapes. Research has shown that women are at greatest risk of homicide at the point of separation or after leaving a violent partner. Plaintiff's belief that she is very much still at risk of death or bodily harm is grounded in the stark statistics of DV fatalities post leaving. Approximately 75% of women who are killed by their batterers are murdered when they attempt to leave or after they have left an abusive relationship.[1] Plaintiff has a reasonable fear of bodily harm by her abuser by having her name revealed.  This fear is a compelling interest that outweighs the countervailing interests. This case is one where the overriding privacy interests of

---

[1] See http://www.domesticabuseshelter.org/infodomesticviolence.htm; See also https://vaw.msu.edu/wp-content/uploads/2013/10/Expartner.pdf

the plaintiff and the public policy that supports such interest such should be valued and protected.

## LEGAL STANDARD

Permitting a plaintiff to proceed anonymously is a matter within the court's discretion. While under Rule 10(a) of the Federal Rules of Civil Procedure, "[t]he title of the complaint must name all the parties." Fed. R. Civ. P., Rule 10(a), courts have "carved out exceptions to the general requirement of disclosure of the names of parties, which permit plaintiffs to proceed anonymously." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008)(internal citations omitted). In exercising its discretion regarding those limited circumstances in which proceeding anonymously is warranted, courts in this Circuit consider a non-exhaustive list of balancing factors, which include:

(1) whether the litigation involves matters that are highly sensitive and of a personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

3

(8)  whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;

(9)  whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10)    whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id* at 190 (internal citations omitted).

No one factor is dispositive nor are courts required to consider each and every factor. Rather, "in determining whether a plaintiff may be permitted to maintain an action under a pseudonym, the Second Circuit has stated that 'the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant.' *Plaintiffs #1-21 v. Cnty. of Suffolk,* 138 F. Supp. 3d 264, 271, 2015 U.S. Dist. LEXIS 140485, *11-12. See also *Michael v. Bloomberg L.P.*, No. 14-CV-2657 (TPG), 2015 U.S. Dist. LEXIS 16683, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) ("The central inquiry in determining whether a plaintiff may proceed pseudonymously is a balancing of a 'plaintiffs interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant.'") (quoting *Sealed Plaintiff*, 537 F.3d at 189).   Here, whether the ten factors are balanced individually or rather in a general manner, Plaintiff's interest keeping her identity undisclosed is based on averting an increased risk of severe bodily harm, which warrants application of the exception to Rule 10(a).

## ARGUMENT

Plaintiff contends this Court should grant plaintiff's motion because Plaintiff has a compelling interest in proceeding anonymously, the public interest weights in favor of allowing her to

proceed anonymously, and the defendants are not prejudiced by allowing her to proceed anonymously.

## A. THE PUBLICATION OF PLAINTIFF'S NAME PRESENTS A LIKELIHOOD THAT HER NEW IDENTITY WILL BE DISCOVERED BY HER ABUSER—SUCH DISCOVERY POSES A SPECIAL RISK OF BODILY HARM, WHICH RISK HAS BEEN RECOGNIZED AS SUFFICIENT TO WARRANT FILING UNDER PSEUDONYM

Here plaintiff avers that should the court not permit her to proceed anonymously she will suffer special harm. This harm is precisely the special or exception circumstances in which plaintiff's privacy interest or credible fear of harm outweighs the public's interests in open courts and the defendant's interest in having the charges against them leveled by a plaintiff under their own name.

The threat to plaintiff here is grave. It is a matter of life of death. As stated in undersigned counsel's affirmation, plaintiff is a DV victim who had reasonable fear that she would be killed by her then spouse. Through the intervention of an organization which assists DV victims, in 2014 plaintiff was rescued.  In 2015 on the advice of her counselors' she changed her name which is thus far unknown to her abuser. Plaintiff has information through her family that her abuser continues to search for her. Plaintiff sought to file as Jane Doe because she reasonably fears that should the details of her case in open court be publicized alongside her name, she faces an increased risk of detection.  Such grave risk has been recognized to present special circumstances sufficient to warrant proceeding anonymously.

<u>Particularized Risk Of Physical Harm Has Been Found To Outweigh Countervailing Interests</u>

Time and again courts when undertaking 10(a) balancing courts have found particularized risk of harm sufficient to warrant an exception to the general rule of FRCP 10(a). As the court stated in *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. Jan. 22, 1996) *supra*, "Plaintiff's allegation that she

has been subjected to death threats would provide a legitimate basis for allowing her to proceed anonymously." See also *Javier H. v. Garcia-Botello* (W.D.N.Y. Nov. 5, 2002), 211 FRD 194 (holding migrant farm workers were permitted to bring lawsuit anonymously, since related criminal action against defendants supported workers' fear of violent retaliation by defendants, and informed public of facts of workers' lawsuit.) See also *Doe v. Smith*, 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999) (plaintiff could proceed where plaintiff was considered suicidal when faced with the prospect of disclosure of her identity, citing a case where disclosure of identities of the plaintiffs created a risk of harm from third parties unaffiliated with the case-- *Doe v Stegall*, 653 F.2d 180, 186 (5th Cir.1981)). See also *Doe v. United States Dep't of State*, 2015 U.S. Dist. LEXIS 173937, *6 (Doe plausibly shows that his life will be in greater danger if his name is publicly connected to a complaint revealing his help with U.S.-led efforts in Iraq) See as persuasive *Plaintiff B v. Francis* (11th Cir. Fla. Feb. 1, 2011), 631 F3d 1310, 22 Fla L Weekly Fed C 1743, 39 Media L Rep (BNA) 1257 (holding district court abused its discretion by failing to adequately consider women's extensive evidence about scope of harm they faced if they were forced to reveal their identities.) It is harm from a third party, plaintiff's ex-husband, which plaintiff seeks protection from. Here the allegation that revelation of her identity to the abuser could result in life threatening harm would "provide a legitimate basis for allowing her to proceed anonymously.)"

### Plaintiff's Identity Remains Unknown To Her Abuser And Her Fear Is Sufficiently Particularized To Support Filing Under Pseudnym

While in *Shakur, supra,* the court initially denied the request on the grounds that plaintiff had failed to "explain[n] how or why the use of her real name in court papers would lead to harm, since those who presumably would have any animosity toward her already know her true identity," the facts at bar are distinguishable. Similarly in *Doe v. Hallock*, 119 F.R.D. 640, 644

1987 U.S. Dist. LEXIS 13258 the court denied the request on the basis that "the source of any harassment apparently is already aware of plaintiff's identity, and there is little reason to believe that disclosure of her identity in this lawsuit would serve to increase the number of such incidents."

By contrast, here, plaintiff's abuser is not aware of her new name and thus this case is distinguishable on the facts. Further with respect to the plaintiff's failure in *Shakur* to provide particularized explanation of the harm, the facts here are also distinguishable. That is, as a practical matter, the disclosure of plaintiff's name in the caption could lead to threat of harm from her abuser in one of several ways.

For one, should plaintiff be required to file under her new legal name, should there by publicity around this case the publication of plaintiff's photograph alongside her name in the press may well be seen by her abuser and thus reveal her new identity. Armed with this information the abuser could locate plaintiff by performing routine searches under her changed name. With this information he could seek to stalk and again attack her.

The likelihood of her abuser learning her identity though press reports is hardly remote. *The Daily News* and *New York Post* have wide circulation in New York. Further the New York Post had previously expressed interest in this matter to plaintiff's attorneys who demurred. Further facts that make this case newsworthy are the identity of corporate Defendant, about which numerous articles have been written by the daily tabloids just within the last year.  A google search for Solera Capital not only reveals these articles but reveals the existence of Jane Doe v. Solera. That is, the very fact of open courts and a free press in plaintiff's case could make her name not only her name known to her abuser but also her whereabouts inasmuch as she appears in court.

Second, Plaintiff's abuser could learn of her new name by increased risk of inadvertent disclosure by her family members during the pendency of the case. Plaintiff's name being revealed in a court proceeding may lead to increased discussion about plaintiff and renewed attention by family members in touch with her abuser. This renewed interest and gossip about plaintiff and her civil suit seeking money damages in part on the basis of her status as a DV victim could stoke renewed attempts to find her. Plaintiff having made a break with her former abuser hardly means she is in the clear. Research has shown that women are at greatest risk of homicide at the point of separation or after leaving a violent partner. Her belief that she is very much still at risk of death or bodily harm is grounded in the stark statistics of DV fatalities post leaving. Should plaintiff's new name become known to her abuser by either of the means stated herein or by some other means related to her appearance in the court record, the risk of harm to her is great, given the past history of threats and actual violence against her.

<u>DV Victims' Fears Should Be Given Particular Credence As Reasonable Assessments Of The Threat</u>

Plaintiff's fears of renewed attacks are sufficiently particularized and not unreasonable. As stated in the US Department of Justice's National Institute of Justice Special Report *Practical Implications of Current Domestic Violence Research for Law Enforcement, Prosecutors and Judges* (June 2009) victim's assessment of risk of often a good predictor of the threat:

> Victim perception of risk has been found to significantly improve the accuracy of prediction over other risk factors [44], increasing ***sensitivity*** — the proportion of true positives that are correctly identified by the test — from 55 to 70 percent. [112] However, the same researchers found that women's perceptions have to be interpreted. Women who felt very safe were less likely to be repeatedly assaulted than those that felt somewhat safe. However, women who were uncertain or felt somewhat unsafe were more likely to be reassaulted repeatedly than those who felt they were in great danger. The reason for this apparent contradiction is that women who felt in greatest danger took effective countermeasures during the study. In other words, the research suggests that if women are not certain they will be safe, they err by giving the benefit of the doubt to their abuser. For these reasons, these researchers concluded that the best predictions of

repeated reassaults were obtained by using risk markers, including women's perceptions. [44, 112] The researchers' concern for victims with regard to assessed risk of abuse is borne out by a study of more than 1,000 women who sought protective orders or shelter, or whose abusers were arrested in Los Angeles or New York City. (Page 24)

Here plaintiff feels greatly at risk of harm should her name be revealed in this court proceeding. Indeed this fear is precisely what caused her to wait nearly two years after her termination to bring suit, so reluctant was she to protect her safety. After having taken the decision to vindicate her rights, and being permitted to file under pseudonym she now faces a renewed threat to her safety.  Given the reasonableness of the fear and the gravity of the potential harm plaintiff should be permitted to proceed at Jane Doe, in light of the balance of other factors.

## B. THERE IS A COMPELLING PUBLIC INTEREST IN PROTECTING DV VICTIMS AND DV VICTIMS HAVE A COMPELLING INTEREST IN PRIVACY THAT HAS BEEN FOUND TO OUTWEIGH THE PUBLIC INTEREST IN OPEN RECORDS

In addition to plaintiff's personal interest, there is an important public interest in protecting DV victims. New York State maintains an Office for the Prevention of Domestic Violence. New York City maintains a Domestic Violence Fatality Review Committee and various initiatives to monitor safeguard and document the threats to domestic violence victims. On the federal level the United States Office on Violence Against Women (OVW) was created following the Violence Against Women Act (VAWA) of 1994, with a budget in excess of 400 million dollars annually. At every level of government there is unanimity that protection of victims of domestic violence is a compelling public interest.

Further, legislatures and courts alike have recognized "that a victim must sometimes even change identity to attain a safe environment," and state agencies have developed procedures to facilitate such identity changes for victims.[2] *Reynolds v. Fraser*, 5 Misc. 3d 758, 762 (Sup. Ct., N.Y. Co., 2004). Given the necessity of name changes to protect DV victims' safety, numerous

---

[2] http://www.opdv.ny.gov/law/summ_subject/confidentiality.html

9

laws across New York State afford DV victims special protections with regard to otherwise public records, due to the special threat posed to DV victims by publically available documents. In all such cases legislators have found that DV victims' interest in safety outweigh the public interest in open records. See *Confidentiality of Voter Registration Records* (A.7793-A Paulin/S.6749 Savino) Signed: October 23, 2017 Chapter 396 Effective: October 23, 2017 Amends: Election Law §5-508 (Allowing victims of domestic violence to apply to their county court or Family Court for an order requiring the local county board of elections to keep any registration or other records confidential.); See also *Legal Name Change Protection* - A.2242 Bronson/S.5240 Savino  Signed: September 22, 2015  Chapter 241 Effective: September 22, 2015 Amends: Civil Rights Law §64-a (Providing greater protection for domestic violence victims seeking a legal name  by broadening the circumstances under which publication of name change may be waived). See also *NYS Address Confidentiality Program* (A.628-A Weinstein/S.5293 Ball) Signed: 2011 Chapter 502 Effective: June 23, 2012 (implementation was amended and delayed until October 25, 2012 by passage of the Domestic Violence Omnibus Bill of 2012 - see Domestic Violence Omnibus Bills category) (Establishing a substitute address program within the NYS Department of State (DOS) to allow victims of domestic violence, who meet prescribed certification requirements, to designate the Secretary of State as their agent for receiving mail and service of process.) See also *Address Confidentiality/Family Court* (S.2113-B Saland/A.7843-A Weinstein) Signed: 1995 Chapter 388 Effective: October 31, 1995 Amends: Family Court Act §154-b (Authorizing family court to allow the petitioner or respondent in any order of protection proceeding to keep his or her address confidential, where the court finds that disclosure of the address would substantially increase the risk of violence.)

As evidence by the above, legislatures and courts have recognized the special threat posed to domestic violence victims by public records and public disclosures and have expressly created safeguards to protect their privacy and safety, such interest in DV victims' safety being more compelling that public's interest in open records.  The court here is called to perform a similar balancing as that having been done by legislatures with respect to domestic violence victims and public records. While legislatures have found the interest of DV victims sufficient to establish entitlement to heightened privacy protection, and comprise of the open records, a similar outcome with respect to open courts is warranted here.

### C.  THE PUBLIC INTEREST IN DISCLOSURE HERE IS NOT GREAT

As discussed, *supra,* weighed against the plaintiff's fear of bodily harm and privacy interest in her name, the interest in public disclosure is not great. Indeed, the intention of FRCP 10(a) requirement that complaint state names of all parties is to apprise parties of who their opponents are and to protect public's legitimate interest in knowing facts at issue in court proceedings. *Shakur*, 164 F.R.D. at 360. Yet as courts have recognized in similar circumstances, protecting Plaintiffs' identities will not impede the public's ability to follow the proceedings as the case is not filed entirely under seal. See *Doe v. Evans,* 202 F.R.D. 173, 176 (E.D. Pa. 2001) (Where Plaintiff was allowed to proceed under a pseudonym while not sealing the case). Plaintiff does not deny that the public has an interest in open courts as a general matter, but argues rather that the special risk of harm to DV victims outweighs this legitimate factor, as legislatures have recognized with respect to open records. Accordingly this factor does not weigh in favor of disclosure of plaintiff's name.

### D.  DEFENDANT IS NOT PREJUDICED BY PLAINTIFF PROCEEDING ANONYMOUSLY

With respect to prejudice to Defendants, this factor too cannot outweigh the threat of harm posed to plaintiff by disclosure of her name.  In determining whether defendants will be prejudiced, courts assess (1) the damage to a defendant's reputation caused by the anonymous proceedings, (2) difficulties in conducting discovery, (3) as well as the fundamental fairness of proceeding in this manner. See *EW v. New York Blood Ctr.,* 213 F.R.D. 108, 112 (E.D.N.Y. 2003).  Looking to each of these factors in turn:   the allegations against Defendants, would remain the same regardless of whether or not plaintiff proceeds under her own name or as a Jane Doe.  See *Doe v. Penzato,* No. CV10-5154 MEJ, 2011 WL 1833007, at *4 (N.D. Cal. May 13, 2011) (finding that there would be no prejudice to defendants in granting plaintiff's motion to proceed anonymously where "Defendants face public exposure regardless of whether plaintiff's identity is made public, and the allegations against them would remain the same.")

Further Defendants have sought to mitigate the reputational harm by seeking to discredit plaintiff as a fraud, a thief and as a disloyal servant through the bringing of baseless counterclaims.  These allegations, baseless though they are, have the effect of acting as a proxy for plaintiff's identity, and mitigate the reputational harm to Defendant by smearing plaintiff.

Further with respect to difficulties in conducting discovery, the parties have already engaged in Pilot Program disclosures pursuant to the court's standing order, and Defendants are aware of plaintiff's identity.  Thus, this factor does not weigh in favor of a finding of prejudice to defendants. See *EW*, 213 F.R.D. at 112 (holding that where defendant knew plaintiff's real identity, there was no "prejudice to its ability to conduct discovery or try the matter if plaintiff were to proceed under a pseudonym"); see also *Doe No. 2 v. Kolko,* 242 F.R.D. 193, 198  2006 U.S. Dist. LEXIS 80859 (holding that where defendants knew plaintiff's true identity, "[o]ther

than the need to make redactions and take measures not to disclose [it], defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers").

Finally with respect to the question of fundamental fairness, plaintiff is not proposing—as the courts have previously rejected—that the mere fact of bringing an employment discrimination claim is sufficient to warrant proceeding under pseudonym. See *Doe v. Individuals*, 561 F. Supp. 2d 249, 257, 2008 U.S. Dist. LEXIS 48749, *21 ("[c]ourts should not permit parties to proceed pseudonymously just to protect the parties' professional or economic life." Citing *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437, 439 n. 1 (S.D.N.Y. 1988).) Rather plaintiff alleges rather that the special risk of harm by disclosure shifts the balance of fairness in her favor . See *K.D. v. City of Norwalk*, 2006 U.S. Dist. LEXIS 42639, 2006 WL 1662905, at *1 (citing *Fed. R. Civ. P. 10(a); Doe v. Stegall, supra*) A party may proceed anonymously only after demonstrating "a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings.")

In light of the harm to plaintiff, it is not unfair to defendants that she seek to proceed as she does.

## E. THE TEN FACTORS WEIGH OVERWHEMINGLY IN FAVOR OF NONDISCLOSURE OF PLAINTIFF'S IDENTITY

As a general matter, plaintiff has articulated why the balance weighs in favor of permitting her to proceed anonymously.  Looking to the specific factors articulated in *Sealed Plaintiff v. Sealed Defendant #1* (2d Cir. N.Y. Aug. 12, 2008), 537 F3d 185 the same assessment is warranted.

With respect to the first and second factors:

(1) whether the litigation involves matters that are highly sensitive and of a personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

13

based on the above-described circumstances surrounding plaintiff's name change, it is clear that plaintiff's request to proceed in this action anonymously is not "merely to avoid the annoyance and criticism that may attend any litigation" but rather, "to preserve privacy in a matter of a sensitive and highly personal nature." *Doe v Szul Jewelry, Inc.,* 2008 N.Y. Misc. LEXIS 8733, 2008 NY Slip Op 31382(U) at *16. Given the above-described circumstances, plaintiff's attempt to avoid being discovered by her abuser is without a doubt "a matter of a sensitive and highly personal nature."  The clear rationale for plaintiff's request to proceed anonymously dispel any suggestion that her request is somehow based on an "illegitimate ulterior motive."

With respect to the third factor— whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity— as discussed above,  plaintiff has gone through great lengths to keep her new identity confidential and from being discovered by her abuser. As discussed above, plaintiff fears for her life through the disclosure to her abuser of her name in the court record. This is the most compelling reason that Plaintiff's request should be granted.

With respect to the fourth factor, that the identification of plaintiff poses an imminent risk of physical harm to her is a near certainty.

With respect to the fifth and sixth factors:

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

the defendants in this action are a private company and its chief executive officer, thus the fifth factor weighs in favor of Defendants; however as discussed above Defendants are not prejudiced by plaintiff proceeding as Jane Doe and this the sixth factor weights in Plsintiff's favor.

With respect to the seventh factor—whether the plaintiff's identity has thus far been kept confidential—plaintiff's identity remains unknown to her abuser and risks discovery by filing under her new name as discussed above.

With respect to the eight factor— whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity— plaintiff is not requesting that the entire matter be filed under seal, and only requests a sealing order with respect to her current and former legal names. See *Id.*, at *16 ("Plaintiff's anonymity here will not obstruct the public's view of the issues joined or the court's performance in resolving them").

With respect to the eighth factor, it bears highlighting that if the Court were to deny plaintiff's request to proceed anonymously, she would be forced to choose between life and limb and the vindication of her claims. In such a circumstance, plaintiff understandably would not proceed with the instant lawsuit.

And with respect to the ninth— whether there is an atypically weak public interest in knowing the litigants' identities— certainly as discussed *supra*, there is a strong interest in protecting DV victim's privacy, and thus in comparison the public interest in revealing plaintiff's identity is atypically weak.

As to the final factor, there are no alternative mechanisms for protecting the confidentiality of the plaintiff.

Thus all but one of the above factor clearly weigh in plaintiff's favor.

**F. LESSER INTERESTS HAVE BEEN FOUND BY COURTS SUFFICIENT TO PERMIT PLAINTIFFS TO PROCEED UNDER PSEUDONYM**

Moreover, courts have permitted plaintiffs to proceed anonymously when facing far less harm in form of social stigma—as opposed to mere humiliation—which is clearly less grave a harm than face by plaintiff here. See. *Doe v. United Services Life Ins. Co.* (S.D.N.Y. Dec. 13, 1988), 123 FRD 437 (Plaintiff will be allowed to proceed using pseudonym where privacy interests and risk of social stigma are involved in that he would be publicly identified as homosexual if his identity were made matter of public record).  See *EW v. N.Y. Blood Ctr.* (E.D.N.Y. Feb. 19, 2003), 213 FRD 108, 54 Fed R Serv 3d (Callaghan) 1149 (Blood transfusion recipient who contracted hepatitis B was allowed to proceed under pseudonym in her action against public organization that had tested blood she had received where potential embarrassment and stigmatization were real).

**G.  REQUIRING DV VICTIMS TO FACE THREAT OF THE  DISCLOSURE OF THEIR NEW IDENTITY/ LEGAL NAME IN ORDER TO VINDICATE THEIR RIGHTS TO BE FREE OF DISCRIMINATION AS DV VICTIMS WOULD UNDERMINE THE PURPOSE OF THE DV DISCRIMINATION LAW AND CHILL ENFORCEMENT**

In the present case plaintiff alleges that her status as a DV victim was a reason she was hired by Solera, but the cruel irony was that defendants saw a benefit to her hire by exploiting her vulnerability because of her status.  This exploitation took several forms but was typified by defendant Ashby's asking plaintiff to "tell her story" of being a DV victim to a group of strangers and then getting angry when she could not and telling her "that [her DV status] is what you are here for".  That is Ashby wanted to make Solera look good on "diversity" while at the same time discriminating against plaintiff based on her status.  Plaintiff has the right to vindicate her rights to be free of discrimination based on her status as a DV victim.  It would again be a cruel irony if in order to vindicate her rights to be free from discrimination she would have to

reveal her identity and risk being located by her abuser. Plaintiff's fear of being located is a real. She in fact made clear to counsel that she would feel so vulnerable that if she could not proceed anonymously she would feel unable to bring this litigation.  Thus, in this type of case forcing plaintiff to choose between revealing her identity and bringing this case would have a chilling effect on victims of DV from vindicating their rights.

## **CONCLUSION**

In view of the foregoing, it is respectfully submitted that an order permitting plaintiff to proceed anonymously is warranted and appropriate.

Dated: New York, New York
        July 19, 2018

                        Respectfully submitted,

                        Mirer Mazzocchi & Julien, PLLC
                        By: Jeanne E Mirer
                        150 Broadway, Suite 1200
                        New York, NY 10038
                        (212) 231-2235
                        *Attorneys for Plaintiff*

17