UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE,

                              Plaintiff,

          – against –

SOLERA CAPITAL LLC and MOLLY ASHBY,
jointly and severally,

                              Defendants.

**OPINION AND ORDER**

18 Civ. 1769 (ER)

Ramos, D.J.:

 Plaintiff/Cross-Defendant Jane Doe ("Doe") brings this action against Defendants/Cross-Plaintiffs Solera Capital LLC ("Solera") and Molly Ashby ("Ashby," and together with Solera, "Defendants"), alleging employment discrimination, a hostile work environment, retaliation, and failure to pay overtime.

 Before the Court are three motions. First, Doe moves for a protective order to continue to proceed anonymously under the Doe pseudonym. Doc. 27. Second, Doe moves to dismiss Defendants' counterclaims. Doc. 23. Third, Defendants cross-move to amend their pleadings. Doc. 32. For the reasons set forth below, Doe's motion to continue to proceed anonymously is DENIED, Doe's motion to dismiss the counterclaims is GRANTED, and Defendants' cross-motion to amend their pleadings is GRANTED.

# I.    BACKGROUND[1]

## A.  Doe's Complaint

Doe is a victim of domestic violence by her former husband.  *See* Compl. ¶ 115.  She was

held in captivity and severely injured until she was rescued by an organization that supports

victims of domestic violence.  Doc. 41-2, ¶ 3.  The organization relocated Doe to two different

safe-houses to escape her husband.  *Id.* ¶ 4, 6.  Doe states that her husband continues to search

for her, even after her name change in April 2015, including as recently as July 2018, when he

made death threats against her family members to pressure them to disclose information about

Doe.  Doc. 41-1, ¶ 7, 28.  She currently suffers from post-traumatic stress disorder ("PTSD") and

is afraid her former husband will find her again.  *Id.* ¶ 9–10.

Doe was referred for employment at Solera by Sanctuary for Families, a program that

assists survivors of domestic violence with job placement.  Doc. 38, at 8.  Solera is a private

equity firm, and Ashby is its chief executive officer.  Compl. ¶¶ 1, 3.  Solera has a reputation as a

diversity-friendly firm that celebrates women.  *Id.* ¶ 5.  While employed at Solera as an executive

assistant, Doe legally changed her name in an effort to protect herself from her former husband.

*Id.* ¶ 115.  Defendants were aware that Doe came out of a difficult domestic violence situation.

*Id.*

Within weeks of her arrival at Solera, Doe began to feel that she was being singled out

for unequal treatment because of her race.  *Id.* ¶ 59.  Doe was humiliated in front of her

colleagues by Ashby's treatment of her as the "token" Black woman.  *Id.* ¶ 90.  Ashby constantly

---

[1] The following facts are drawn from Doe's complaint and Defendants' counterclaims.  They are assumed true for
purposes of deciding the pending motions.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)
(motion to dismiss for failure to state a claim); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198
(2d Cir. 1992) (motion to dismiss for lack of subject-matter jurisdiction); *Arnold v. Research Found. for State Univ.
of N.Y.*, 216 F. Supp. 3d 275, 284 (E.D.N.Y. 2016) (motion to amend).

touched Doe's hair, played offensive music with racist epithets in the office, and singled out Doe to sing and dance with her so as to entertain their colleagues. *Id.* ¶ 124. As a result of the racially hostile work environment during her employment at Solera, Doe has suffered and continues to suffer mental anguish and emotional distress. *Id.* ¶ 183. Additionally, while Doe was required to work for more than 80 hours a week, she was not paid the required overtime rate. *Id.* ¶ 176. When Doe requested a raise, Ashby refused and allegedly told her, "Don't forget where you came from." *Id.* ¶ 51. In December 2015, Doe was terminated from Solera because her position, as she was told, had become "redundant." *Id.* ¶ 133.

### B. Defendants' Counterclaims

In their counterclaims, Defendants allege that during her employment as an executive assistant, Doe abused the access she was granted to the work and personal files of Solera executives in that, on two separate occasions, Doe forwarded sensitive work information to her personal email address. Amended Answer with Counterclaims ¶¶ 5, 31. Specifically, on February 13, 2015, she forwarded an internal company email containing a confidential trend guide, and on December 14, 2015, she forwarded a copy of an executive's medical records to her private email, after being asked to scan the documents. *Id.* ¶¶ 32–37. Additionally, Doe was caught using Ashby's cell phone without authorization and was seen looking through Ashby's personal file folder. *Id.* ¶¶ 39–41. Among the documents contained in Ashby's important files was a copy of a letter written about her father from a war veteran with whom her father had served. *Id.* ¶ 40. The letter is now missing. *Id.*

Doe also had access to company credit cards and was informed that all charges made to these cards had to be for work-related purposes and authorized by an executive. *Id.* ¶¶ 6, 8. However, Doe improperly made purchases for personal items on these cards. *Id.* ¶ 10. On

October 2, 2015, Doe allegedly placed an order with Lexington Flower Shop for a total of $174.20 using a Solera credit card issued to the Vice President, Finance and Controller, Ari Herman ("Herman"). *Id.* ¶ 13, 16, 18. The second unauthorized charge was on November 8, 2015, when Doe allegedly paid a $50.00 gratuity to Kur Skin Lab for a facial, also using Herman's company credit card. *Id.* ¶¶ 24–28.

### C. Procedural History

On February 27, 2018, Plaintiff brought the instant suit, alleging employment discrimination and a hostile work environment on the basis of race and her status as a survivor of domestic violence, as well as retaliation and failure to pay overtime. *See* Compl. On April 30, 2018, Defendants filed an Answer to the Complaint, Doc. 5, and on May 21, 2018, they filed an Amended Answer, along with two counterclaims: breach of fiduciary duty under the faithless servant doctrine and conversion. Doc. 11. On July 5, 2018, Plaintiff moved to dismiss the counterclaims. Doc. 23. In response, Defendants moved to amend their counterclaims to add, in the alternative to conversion, an unjust enrichment claim.[2] Doc. 32. Before the Court is Plaintiff's motion for a protective order to continue to proceed anonymously, Plaintiff's motion to dismiss the counterclaims, and Defendants' cross-motion to amend their pleadings.

## II. LEGAL STANDARDS

### A. Motion for Protective Order to Continue to Proceed Under Pseudonym

The Federal Rules of Civil Procedure require that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties." Fed. R.

---

[2] Doe objected to Defendants' attempt to move to amend their pleadings without first requesting a pre-motion conference. Doc. 34. The Court overruled the objection and directed Doe to address the sufficiency of the motion to amend in her reply.

Civ. P. 10(a).  These rules are intended to further the fundamental right of public access to the courts.  *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).  Identifying parties to a lawsuit is an important aspect of the presumption of access because the public has a right to know who is utilizing the courts.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).  The use of fictitious names or pseudonyms in place of the true identities of litigants "runs afoul of the public's common law right of access to judicial proceedings . . . , a right that is supported by the First Amendment."  *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006) (citation omitted).  Private civil suits advance the public's interest in enforcing legal and social norms.  *Id.* at 159.  When a lawsuit involves issues concerning a defendant's actions or a particular incident, as opposed to challenging abstract public policies, open proceedings serve the judiciary's interest in a fair and accurate fact-finding adjudication.  *Id.*

Courts have recognized an exception to the rules requiring disclosure of party identities in cases that implicate individual privacy concerns.  *Doe v. City of New York*, 201 F.R.D. 100, 101 (S.D.N.Y. 2001).  The decision to permit a litigant to proceed anonymously is entrusted to the sound discretion of the court and requires a careful and fact-specific examination into the circumstances of the case at hand.  *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *Del Rio*, 241 F.R.D. at 159.  "[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant."  *Sealed Plaintiff*, 537 F.3d at 189.  The Second Circuit has identified the following ten non-exhaustive factors to be considered in determining whether a plaintiff should be allowed to proceed anonymously:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his or her age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (alterations, citations, and internal quotation marks omitted).

"[A] district court is not required to list each of the factors or use any particular formulation as long as . . . the court balance[s] the interests at stake in reaching its conclusion." *Id.* at 191 n.4.

### B. Plaintiff's Motion to Dismiss the Counterclaims and Defendants' Motion to Amend

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Inter-American Dev. Bank v. IIG Trade Opportunities Fund N.V.*, 2017 U.S. Dist. LEXIS 199090, at *11 (S.D.N.Y. Dec. 4, 2017) (internal citations and quotations omitted). Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss

pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Defendants' motion to amend their counterclaims is the flip side of plaintiff's motion to dismiss because a proposed amendment is futile if it would be subject to a successful motion to dismiss. *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002). Accordingly, these motions will be analyzed together.

## III. DISCUSSION

### A. Motion for Protective Order to Continue to Proceed Under Pseudonym

#### 1. <u>Factor 1</u>

Under the first factor, the court determines whether the litigation involves matters that are highly sensitive and of a personal nature. Doe states that proceeding under her new legal name

would place her at a significant risk of physical and psychological harm. Doc. 41, at 7–10. Though there is no evidence of an actual threat, Doe fears that proceeding under her name will allow her former husband to learn her new name, thereby enabling him to locate her. *Id.* at 8. Doe states that proceeding under her new name would cause anxiety and distress. *Id.* at 10.

While the details of Doe's personal experience as a domestic violence victim are highly sensitive and personal in nature, the subject matter of this litigation — claims of employment discrimination, a hostile work environment, retaliation, and failure to pay overtime — is not. Thus, the first factor weighs against proceeding anonymously.

2. Factor 2

The risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously. *Doe v. Smith*, 105 F. Supp. 2d 40, 43 (E.D.N.Y. 1999). Doe states that she suffers from PTSD and that the symptoms of her disorder have grown worse at the prospect of proceeding under her new legal name. Doc. 41-1, ¶ 9, 12. In *Doe v. Smith*, the court allowed the plaintiff to proceed anonymously after she provided specific evidence from medical professionals predicting that revelation of her identity would likely "cause psychological and emotional pain so intense that it would threaten her stability, her safety, and even her life." *Smith*, 105 F. Supp. 2d at 43. In the instant case, Doe has not provided any medical corroboration to support her claim regarding the risk of psychological injury, and thus the Court declines to speculate regarding "the nature, level, or intensity of [her] mental injury." *Id.* at 42.

More generally, "[c]ourts have allowed plaintiffs to proceed anonymously where disclosure of their identities created a risk of harm from third parties unaffiliated with the case." *Smith*, 105 F. Supp. 2d at 45. Courts have acknowledged that domestic violence victims face a

particular risk of physical retribution from their former abusers that may justify proceeding anonymously.  *See, e.g., E.A. v. Brann,* 2018 U.S. Dist. LEXIS 143208, at *10 (S.D.N.Y. Aug. 22, 2018) (noting that the risk of physical or mental retribution faced by a domestic violence victim may justify proceeding anonymously); *Al Otro Lado, Inc. v. Nielsen*, 2017 U.S. Dist. LEXIS 210401, at *14 (S.D. Cal. Dec. 20, 2017) (allowing a plaintiff to proceed anonymously where she fled from a physically abusive ex-boyfriend).

A "[p]laintiff's allegation that she has been subjected to death threats would provide a legitimate basis for allowing her to proceed anonymously."  *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996).  However, if a plaintiff has not provided any details of the supposed threat, then that "plaintiff simply has not shown that she is entitled to proceed under a pseudonym in this action."  *Id.*  In contrast to evidence of actual physical harm, courts have found that evidence of embarrassment, social stigmatization, and economic harm provides an insufficient basis for proceeding anonymously.  *See, e.g., Doe v. Delta Airlines, Inc.*, 672 F. App'x 48, 52 (2d Cir. 2016); *Anonymous v. Simon*, 2014 U.S. Dist. LEXIS 27563, at *5 (S.D.N.Y. Mar. 3, 2014).

In this case, Doe seeks to avoid actual physical and mental harm, not mere embarrassment, social stigmatization, and economic injury.  Doe states that she fears harm from her former abuser, which is cognizable as a basis for proceeding anonymously.  Unlike the cases cited by Defendants, Doe fears disclosure of an identity not heretofore disclosed to the public. *See, e.g., Shakur*, 164 F.R.D. 359 (denying a sexual assault victim's request to proceed anonymously in part because "those who presumably would have any animosity toward [the plaintiff] already know her true identity"); *Mateer v. Ross, Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C.*, 1997 U.S. Dist. LEXIS 4517 (S.D.N.Y. Apr. 10, 1997) (noting that plaintiff's name was in the action already filed in state court, thereby inhibiting "[a]ny shield of privacy"

that plaintiff would be awarded by proceeding anonymously). The risk of retaliatory harm that a plaintiff may face from proceeding with her actual name is considerably reduced when the public is already aware of the plaintiff's identity. *See, e.g.*, *Shakur*, 164 F.R.D. at 362; *Mateer*, 1997 U.S. Dist. LEXIS 4517, at *17–19.

Notably, in the recent decision *E.A. v. Brann*, the court stated that the petitioner failed to show disclosure of his name "poses any risk of the kind that the second factor seeks to protect – which is not the reach of the law, but of a risk [of] physical or mental retribution (for, say, a *domestic violence victim*)." 2018 U.S. Dist. LEXIS 143208, at *10 (emphasis added). From this statement, it is reasonable to infer that this court considers harm to victims of domestic violence as the relevant type of harm that the second factor seeks to address.

According to the U.S. Department of Justice's NATIONAL INSTITUTE OF JUSTICE SPECIAL REPORT, *Practical Implications of Current Domestic Violence Research: For Law Enforcement, Prosecutors and Judges*, as cited by Doe, a victim's assessment of risk is often a good predictor of the threat.[3] Doe states that she currently suffers from PTSD, and although she has a new name, she is afraid her former husband will find and harm her once more. Doc. 41-1, ¶ 9 10. Doe was rescued by an organization that supports victims of domestic violence and was subsequently relocated to not one, but two different safe-houses. Doc. 41-2, ¶ 3–4, 6. Doe states that his attempts to locate her have continued since her name change in April 2015, including death threats made against her family members in July 2018 to pressure them to disclose information about Doe. Doc. 41-1, ¶ 7, 28. There seems to be an apparent risk to both Doe's

---

[3] Research shows the best predictions of repeated assaults were obtained by using risk markers, such as the perceptions of women. For example, women who felt very safe were less likely to be repeatedly assaulted than women who felt somewhat safe. Andrew R. Klein, *Practical Implications of Current Domestic Violence Research: For Law Enforcement, Prosecutors and Judges*, NATIONAL INSTITUTE OF JUSTICE (SPECIAL REPORT) 24 (June 2009).

physical safety as well as her mental health if the proceeding were to continue without the Doe pseudonym.

For these reasons, and given the sensitive nature regarding the disclosure of the identity of domestic violence victims, this Court finds the second factor weighs in favor of proceeding anonymously.

3. Factor 3

Under the third factor, courts consider whether the plaintiff commenced suit in order to prevent the type of injury that disclosure of her identity would cause. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). For example, a plaintiff may proceed anonymously in a privacy claim if disclosure of her name would inflict the type of injury she seeks to avoid. *See Roe v. Ingraham*, 364 F. Supp. 536, 547 n.7 (S.D.N.Y. 1973).

In the instant case, Doe is not pursuing a privacy claim. Her claims against Solera include employment discrimination, a hostile work environment, retaliation, and failure to pay overtime. These injuries would not be incurred as a result of disclosure of her name in the proceedings.

Therefore, this Court finds the third factor weighs against proceeding anonymously.

4. Factor 4

Whether the plaintiff is particularly vulnerable to possible harms of disclosure is an additional determination for courts to make. *Sealed Plaintiff*, 537 F.3d at 190. The plaintiff's age is a critical factor in this determination, as courts have been readier to protect the privacy interest of minors in legal proceedings than of adults. *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). If a plaintiff is not a child, this factor weighs against a finding for anonymity. *Id.*; *Doe v. Stegall*, 653 F.2d 180, 186 (4th Cir. 1981) (stating that the anonymity was warranted

to protect minor plaintiffs against a risk of violence for unpopular religious beliefs). In the instant action, the Plaintiff is an adult with the capacity to make informed decisions for herself. Since she is not a minor, she is not particularly vulnerable to the type of harm this factor addresses.

Therefore, this Court finds the fourth factor weighs against proceeding anonymously.

5. Factor 5

The fifth *Sealed Plaintiff* factor examines whether the suit challenges the actions of the government or that of private parties. *Sealed Plaintiff*, 537 F.3d at 189. When a lawsuit challenges governmental actions, actors, or policies, the plaintiff has a strong interest in proceeding anonymously. *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). In private civil suits, courts recognize there is a significant interest in open judicial proceedings since such suits "do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms." *Del Rio*, 241 F.R.D. at 159.

Here, Doe's suit challenges the actions of private parties. Thus, this factor weighs against proceeding anonymously.

6. Factor 6

The sixth *Sealed Plaintiff* factor concerns the extent to which allowing the plaintiff to proceed anonymously would prejudice the defendants. *Sealed Plaintiff*, 537 F.3d at 189. Where a case involves potentially damaging allegations, "basic fairness dictates that plaintiffs who publicly accuse defendants in civil suits must sue under their real names." *Mateer v. Ross, Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C.*, 1997 U.S. Dist. LEXIS 4517, at *17 (S.D.N.Y. Apr. 10, 1997). In determining whether a defendant will be prejudiced, courts look at the damage to a defendant's reputation caused by the anonymous proceedings, difficulties in

conducting discovery, and the fundamental fairness of proceeding in this manner.  *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003).  The unfairness of this situation is that the defendant "would be required to defend himself publicly while [the] plaintiff could make her accusations from behind a cloak of anonymity."  *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (alteration in original).

As Doe correctly points out, the allegations against Solera and Ashby would remain the same regardless of whether Doe's identity is disclosed or not.  Doc. 29 at 17.  However, when a plaintiff brings serious charges that "relate directly to the professionalism exercised" by a defendant, "fairness requires that he stand by those allegations."  *Mateer*, 1997 U.S. Dist. LEXIS 4517, at *16; *Shakur*, 164 F.R.D. at 361 (noting that since the plaintiff chose to bring the lawsuit which put her own credibility in issue, she must now "be prepared to stand behind her charges publicly").

Media attention, depending on its scope, also has the potential to be prejudicial toward parties.  *Shakur*, 164 F.R.D. at 362 (discussing the defendant's notoriety and the likelihood of the case attracting "significant media attention").  However, contrary to Doe's assertion, the media attention this case will attract is speculative and claims of its already heightened interest are, at this moment, unfounded.  Neither party points to any actual media coverage concerning this case.

With respect to difficulties in conducting discovery, there is no "prejudice to [defendant's] ability to conduct discovery or try the matter if plaintiff were to proceed under a pseudonym" where the defendants already know the plaintiff's name.  *EW*, 213 F.R.D. at 112; *see also Doe No. 2 v. Kolkto*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006) (holding that since defendants already knew plaintiff's identity, "[o]ther than the need to make redactions and take

measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers").

Here, Solera and Ashby are already aware of Doe's true identity. Doc. 38, at 18. Thus, this factor does not add additional prejudice to Solera and Ashby. Nonetheless, the fundamental unfairness of Solera and Ashby sustaining reputation damage while Doe stands behind the cloak of anonymity causes prejudice to Defendants. *Shakur*, 164 F.R.D. at 361 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)) ("'[B]asic fairness' dictates that plaintiffs who publicly accuse defendants in civil suits 'must [sue] under their real names.'" (second alteration in original)).

Therefore, the sixth factor weighs against proceeding anonymously.

7. Factor 7

Under the seventh *Sealed Plaintiff* factor, courts consider whether the plaintiff's identity has thus far been kept confidential. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). Prior disclosure to the public of a plaintiff's identity effectively nullifies the shield of privacy provided by proceeding anonymously. *See, e.g.*, *Shakur*, 164 F.R.D. 359; *Mateer v. Ross, Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C.*, 1997 U.S. Dist. LEXIS 4517 (S.D.N.Y. Apr. 10, 1997). Defendants argue that their knowledge of Doe's true identity means this factor weighs against anonymity. Doc. 38, at 17–18. However, the threat of retaliation that Doe faces is not from Solera and Ashby but from a third party (her former husband) who does not know her true identity. Defendants' knowledge of Doe's identity does not disrupt the fact that Doe's anonymity to the public has been preserved to date.

Thus, the seventh factor weighs in favor of proceeding anonymously.

8. Factors 8 and 9

The eighth factor is whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity. *Sealed Plaintiff*, 537 F.3d at 190. It is "in the public interest that the price of access to the courts not be too high." *Doe v. N.Y. Blood Ctr.*, 39 F. Appx 686 (2d Cir. 2001). "[L]awsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties." *Shakur*, 164 F.R.D. at 361. There is a "general presumption that parties' identities are public information." *A.B. v. Hofstra Univ.*, 2018 WL 1935986, at *3 (E.D.N.Y. Apr. 24, 2018). In order to protect her anonymity, a plaintiff must present evidence that overcomes this presumption. *See A.B. v. C.D.*, 2018 U.S. Dist. LEXIS 68919, at *7 (E.D.N.Y Apr. 24, 2018).

The ninth factor is whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities. *Sealed Plaintiff*, 537 F.3d at 190. Where the action in the lawsuit is not based on "abstract challenges to public policies but rather with regard to particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006) (concluding that the factual nature of the lawsuit, which concerned a series of incidents involving mistreatment by police officers, weighed in favor of disclosing plaintiff's identity).

Here, Doe does not seek resolution of an abstract legal principle. Her claims concern specific, fact-based incidents. There is no atypically weak public purpose since the case concerns specific wrongdoings of private parties. Furthermore, as this case involves alleged employment discrimination based on race by a company that prides itself on diversity, it is likely that the public will be interested in the facts of this case.

Therefore, the eighth and ninth factors weigh against proceeding anonymously.

9. <u>Factor 10</u>

The tenth and last factor is whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. *Sealed Plaintiff*, 537 F.3d at 190. If a viable alternative to complete anonymity exists, this factor weighs against a finding for anonymity. *See Doe v. United States*, 2017 U.S. Dist. LEXIS 83745, at *5 (S.D.N.Y. June 1, 2017) (determining that it would be inappropriate for the plaintiff to proceed under a pseudonym where alternative measures could be taken to protect his privacy interest). Sealing and redacting certain documents containing sensitive information are sufficient alternatives to anonymity and, in fact, routinely done in cases involving sensitive matters. *Anonymous v. Medco Health Sols., Inc*., 588 F. App'x 34, 35 (2d Cir. 2014) (rejecting the assertion that a plaintiff's medical condition and its economic effect on career prospects justified the plaintiff's request to proceed under a pseudonym).

In the instant case, Doe has already legally changed her name. Compl. ¶ 115. According to Doe, her former husband does not know her new name, nor does he know where she works. As suggested by Solera and Ashby, if documents referencing Doe's *original* name or any information that could be used to locate her (*e.g*., her address) are sealed and redacted, the connection between her old and new names would not be readily established by her former husband. With this alternative, Doe's identity and safety would not be compromised.

Therefore, the tenth factor weighs against proceeding anonymously.

10. <u>Summary</u>

Factors two and seven weigh in favor of proceeding anonymously. However, the remaining factors all weigh against anonymity. No one factor is dispositive in determining

whether the plaintiff should continue to proceed under a pseudonym.  While the court

sympathizes with Doe and understands her fear of identification, Doe's interest in anonymity in

this instant action does not outweigh the public interest in disclosure or prejudice to the

Defendants.

### B.  Motion to Dismiss Counterclaims

1.  <u>Cross Motions to Dismiss the Counterclaims and Amend/Correct Pleading</u>

As discussed above, these cross motions require the Court to engage in the same analysis,

namely, determining whether these counterclaims state a claim pursuant to Rule 12(b)(6).  We

address each proposed counterclaim in turn.

2.  <u>Counterclaim I—Faithless Servant</u>

The first Counterclaim against Doe is for breach of fiduciary duty under the faithless

servant doctrine.  Under New York law, to succeed on a claim for breach of fiduciary duty, "a

plaintiff must demonstrate the existence of a fiduciary relationship between the parties and a

breach of that duty by the defendant."  *Fagan v. First Sec. Invs., Inc*., 2006 U.S. Dist. LEXIS

66065, at *4 (S.D.N.Y. Sept. 15, 2006).  Fundamental to the employer-employee relationship is

the proposition that an employee is obligated to be loyal to his employer and is "prohibited from

acting in any manner inconsistent with his agency or trust and is at all times bound to exercise

the utmost good faith and loyalty in the performance of his duties."  *W. Elec. Co. v. Brenner*, 41

N.Y.2d 291, 295 (1977) (quoting *Lamdin v. Broadway Surface Advert. Corp*., 272 N.Y. 133, 138

(1936)).

Under the faithless servant doctrine, "[o]ne who owes a duty of fidelity to a principal and

who is faithless in the performance of [her] services is generally disentitled to recover [her]

compensation, whether commissions or salary." *City of Binghamton v. Whalen*, 141 A.D.3d 145,

147 (3d Dep't 2016) (citing *Feiger v. Iral Jewelry*, 41 N.Y.2d 928, 928 (1977); *Murray v. Beard*, 102 N.Y. 505, 508–09 (1886); *Matter of Blumenthal (Kingsford),* 32 A.D.3d 767, 768 (1st Dep't 2006); *Am. Map Corp. v. Stone*, 264 A.D.2d 492, 492–93 (2d Dep't 1999)).

In New York, courts "continue to apply two alternative standards for determining whether an employee's conduct warrants forfeiture under the faithless servant doctrine." *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010).

The first standard requires "the misconduct and unfaithfulness . . . substantially violates the contract of service"[4] such that it "permeate[s] [the employee's] service in its most material and substantial part."[5] Courts have found disloyalty not to be "substantial" when the behavior consisted of a single act of disloyalty, as opposed to a persistent pattern, or the employer knew of and tolerated the behavior. *Id.*; *see, e.g.*, *Schwartz v. Leonard*, 138 A.D.2d 692 (2d Dep't 1988) (stating that a single act of disloyalty—a lawyer removing files from defendant's office and starting his own law practice—did not warrant forfeiture because there was no "persistent pattern of disloyalty"); *Sundland v. Korfund Co.*, 260 A.D. 80 (1st Dep't 1940) (stating that evidence of an employee's theft at "frequent intervals throughout the entire period of his service" was sufficient to warrant forfeiture); *Bravin v. Fashion Week, Inc.*, 73 Misc. 2d 974 (Civ. Ct. Suffolk Cty. 1973) (finding that there was no contract violation or forfeiture where employer continued employment of an allegedly insubordinate person). New York courts have not defined the "material and substantial" standard, thereby leaving it to a case-by-case determination whether the employee's conduct was a violation of the doctrine. *Sanders v. Madison Square Garden*, 2007 WL 1933933, at *5 (S.D.N.Y. July 2, 2007).

---

[4] *Id.* at 201 (quoting *Turner v. Konwenhoven*, 100 N.Y. 115, 120 (1885)).

[5] *Id.* at 203 (quoting *Abramson v. Dry Goods Refolding Co.*, 166 N.Y.S. 771, 773 (1st Dep't 1917)).

The second standard requires only "misconduct . . . that rises to the level of a breach of a duty of loyalty or good faith." *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 202 (2d Cir. 2003). In other words, this standard is met when an employee "acts adversely to [her] employer in any part of the transaction, or omits to disclose any interest which would naturally influence [her] conduct in dealing with the subject of [her] employment." *Id.* (quoting *Murray v. Beard*, 102 N.Y. 505, 508 (1886)). The faithless servant doctrine is "limited to matter relevant to affairs entrusted" to the employee. *Sanders*, 2007 WL 1933933, at *4.

Despite the conflicting standards, "New York courts have not reconciled any differences between them, or defined the circumstances, if any, in which one standard should apply rather than the other." *Phansalkar*, 344 F.3d at 202. Instead, in the two Second Circuit cases that highlight the conflict, the court simply noted that the defendant in each case was liable because he qualified as a faithless servant under either test. *See id.*; *Carco Grp.*, 383 F. App'x at 76; *see also Khaldei v. Kaspiev*, 135 F. Supp. 3d 70, 84 (S.D.N.Y. 2015) (finding it not necessary to resolve the issue because defendant is a faithless servant even under the more stringent standard). Here, while the Court finds that the offending activity with which Doe is charged clearly does not meet the first, more stringent test, because those actions cannot reasonably be said to permeate Doe's service in its "most material and substantial part," it may arguably fall within the second, less stringent test, which only requires misconduct that rises to the level of a breach of a duty of loyalty or good faith. However, the Court finds that the claim fails even under the less stringent standard for three reasons.

First, as the district court found in *Grewal v. Cuneo*, "the duty of loyalty 'has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the

employer, or accepts improper kickbacks.'" 2016 U.S. Dist. LEXIS 8349, at *21–22 (S.D.N.Y.

Jan. 25, 2016) (quoting *Farricker v. Penson Dev., Inc*., 2010 U.S. Dist. LEXIS 20918, at *2

(S.D.N.Y. Mar. 4, 2010)); *see also Veritas Capital Mgmt. L.L.C. v. Campbell*, 2008 WL

5491146, at *10–11 (N.Y. Sup. Ct. 2008) (same); *accord Westwood Chem. Co. v. Kulick*, 570 F.

Supp. 1032, 1040 (S.D.N.Y. 2010). Here, there simply is no evidence that Doe unfairly

competed with Defendants. They do not allege that Doe improperly used Defendants' time and

resources or confidential information to create a competing firm, or that she received an

improper kickback. *Grewal* is instructive. There, the court found that the allegations, which

included serious charges against a lawyer by her former law firm including representing third

parties without the firm's authorization, lying to the firm regarding possession of third parties'

documents, and preparing to take the firm's clients upon her departure from the firm, were

insufficient to establish a misappropriation of resources or diversion of profits. *See also*

*Schwartz v. Leonard*, 526 N.Y.S.2d 506, 508 (2d Dep't 1988) (finding allegation that defendant

took client files and made secret plans to move to new office space insufficient to show that

defendant neglected the files during the period of his employment or that he was furthering his

own interest at the expense of the plaintiff).

Second, while Doe's alleged misconduct is certainly improper, there is insufficient

evidence that it consisted of a "persistent pattern of disloyalty" that courts have found necessary

to bring conduct within the confines of the doctrine. *Compare Schwartz v. Leonard*, 526

N.Y.S.2d at 508 (denying faithless servant claim where attorney secretly removed employer's

confidential files because employer did not show there was a "persistent pattern of disloyalty"),

*with Khaldei v. Kaspiev*, 135 F. Supp. 3d 70, 85–86 (S.D.N.Y. 2015) (finding defendant was a

faithless servant where defendant engaged in multiple acts of disloyalty over many years and

"persisted boldly through an opportunity to correct"), *and City of Binghamton v. Whelan*, 141 A.D.3d 145, 146 (3d Dep't 2016) (defendant's admission to stealing more than $50,000 from plaintiff over a course of six years constitutes conclusive proof of his engagement in repeated acts of disloyalty).

Finally, the faithless servant doctrine doesn't apply on the facts of this case because Defendants have not cited, and the Court has not found, a case where the doctrine was applied to the type of garden-variety, petty pilfering by an employee as alleged here.[6] The most analogous case cited to the Court on this instant motion is *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 466 (S.D.N.Y. 2008), because that case also involved employee/plaintiffs that alleged, among other claims, wage violations, and a defendant/employer that sought to bring counterclaims for violation of the faithless servant doctrine. There, the proposed counterclaims were based on the alleged sexual harassment by one plaintiff against coworkers, and the alleged misuse of a customer's credit card by another plaintiff. *Id.* at 466. In finding that the counterclaims failed as a matter of law, the court described them as "small beer," *id.*, and noted "[n]or can it be . . . that every routine termination for sexual harassment or credit card fraud necessarily raises faithless servant claims," *id.* at 470. So too here, the improper use of the firm's credit card for a total of $224.20, and the alleged snooping of admittedly sensitive information, cannot be said to rise to the level of substantial disloyalty that was present where courts have found a violation of the doctrine. *See Salus Capital Partners, LLC v. Moser*, 289 F. Supp. 3d 468, 481 (S.D.N.Y. 2018) (stating that the employee's manipulation of roughly

---

[6] And a good thing too. The faithless servant doctrine calls for "drastic" remedies. *Sanders*, 2007 WL 1933933, at *6. An individual who has been found to violate the doctrine can be made to forfeit all of her compensation from the moment the violation began. *Phansalkar*, 344 F.3d at 208. On the facts of this case, Doe would have to forfeit almost the entirety of her compensation if found in violation because she was hired on February 9, 2015, and was alleged to have forwarded the trend guide on February 13, 2015.

$100,000 in invoices was a serious misconduct that substantially violated his contract); *Sansum v. Fioratti*, 128 A.D.3d 420, 421 (1st Dep't 2015) (finding a breach of duty of loyalty under the faithless servant doctrine where defendant's testimony conclusively established he embezzled not less than $100,000 from his employer over two years); *William Floyd Union Free Sch. Dist. v. Wright*, 61 A.D.3d 856, 859 (2d Dep't 2009) (determining that former treasurer of school district's guilty plea wherein he admitted to stealing from the district over a period of three years established a breach of fiduciary duty).

Therefore, Defendants fail to state a claim for breach of fiduciary duty under the faithless servant doctrine pursuant to Rule 12(b)(6). The counterclaim is dismissed without prejudice.

3. Counterclaim II—Conversion

The second proposed counterclaim sounds in conversion. Amended Answer with Counterclaims ¶ 1. Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)). "To withstand a motion to dismiss, a claim for conversion of funds must allege: (1) an injury caused by an actionable wrong other than a breach of contract; (2) that the plaintiff owned the funds at the time they were converted; (3) the defendant exercised unauthorized dominion over the funds; (4) that the funds were specific and identifiable; and (5) that the defendant was required to treat the funds in a particular manner, but failed to do so." *Cal Distrib. v. Cadbury Schweppes Ams. Bevs., Inc.*, 2007 U.S. Dist. LEXIS 854, at *33 (S.D.N.Y. Jan. 5, 2007).

In New York, the type of property subject to a conversion claim is tangible identifiable personal property, and "intangible property . . . that bear[s] a substantial similarity to tangible

property, like electronically stored data and other information." *In re Tashlitsky*, 492 B.R. 640, 649 (Bankr. E.D.N.Y. 2013). "More particularly, if the allegedly converted money is incapable of being described or identified in the same manner as a specific chattel, it is not the proper subject of a conversion action." *Interior by Mussa, Ltd. v. Town of Huntington*, 664 N.Y.S.2d 970, 972 (2d Dep't 1997).

In the instant case, Solera and Ashby allege Doe made two improper personal charges to Herman's company credit card. Amended Answer with Counterclaims ¶ 10. It is further alleged that Doe was aware all charges made to company cards had to be authorized by Solera executives and used for work-related expenses only. *Id.* ¶ 8. However, the assertion of stolen funds as it presently stands is not "specifically identifiable." *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dep't 1995) ("Where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner.").

*Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 409 (S.D.N.Y. 2012), is on all fours with this case. In *Mazzola*, the plaintiff sought return of the money the defendant charged to her debit card. The conversion claim was dismissed, however, because the plaintiff did not "allege that the defendants had a specific fund of money that belonged to her," nor did she "claim ownership of a 'specifically identifiable, segregated' fund." *Id.* Like the plaintiff in *Mazzola*, Defendants' conversion claim must fail because Solera mentions two separate charges Doe allegedly made but does not specify an identifiable, segregated fund. Nor is the claim saved by Defendants' argument that what was converted was the credit limit associated with the card. As the court noted in *Mazzola*, "[a]lthough the fund in question is not the plaintiff's bank account associated with her debit card, but rather the fund in which the defendants allegedly kept the

plaintiff's money, even if the relevant fund were her bank account she would not have alleged adequately a specific fund." *Id.* at 409 n.7.

Accordingly, Defendants have failed to state a claim for conversion pursuant to Rule 12(b)(6). The counterclaim is dismissed without prejudice.

### 4. Counterclaim III—Unjust Enrichment

As an alternative to its counterclaim for conversion, Defendants propose to assert an unjust enrichment counterclaim. Amended Answer with Counterclaims ¶ 54–57.

To establish unjust enrichment under New York law, the basic elements require proof that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Grynberg v. ENI S.P.A.*, 503 F. App'x 42, 43 (2d Cir. 2012). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 685 N.Y.S.2d 381, 381 (4th Dep't 1999)). "Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).

This counterclaim fails because, sounding as it does on credit card fraud, it must meet the pleading requirements of Rule 9(b), and it fails to do so. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) ("Claims that sound in fraud are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b) . . . ."). In the instant case, it is alleged that Doe made two unauthorized purchases. Amended Answer with Counterclaims ¶¶ 16–18, 25–28. However, Defendants only assert allegations based on "information and belief" that there were improper credit card withdrawals. "[F]raud pleadings generally cannot be based on information and

belief." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988). "Allegations may be based upon information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (citing *Stern*, 844 F.2d at 999 n.1). "This exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.* Here, the facts surrounding the improper credit card purchases are not peculiarly within Doe's knowledge. Defendants therefore cannot simply rely on their "information and belief" for an unjust enrichment claim.

Accordingly, Defendants have failed to state a claim for unjust enrichment pursuant to Rule 12(b)(6). The counterclaim is dismissed without prejudice.

### 5. Supplemental Jurisdiction

The Court, having dismissed the three counterclaims, need not determine whether it may exercise supplemental jurisdiction over them.

## IV. CONCLUSION

For the reasons set forth above, Doe's motion for a protective order to continue to proceed anonymously is DENIED. Plaintiff is directed to file a Third Amended Complaint to include her actual name by April 12, 2019. Doe's motion to dismiss counterclaims is GRANTED, and Defendants' cross-motion to amend their pleadings is DENIED without prejudice. The Clerk of Court is respectfully directed to terminate the motions, Docs. 23, 27, and 32.

It is SO ORDERED.

Dated: March 31, 2019
New York, New York

Edgardo Ramos
United States District Judge