UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                  Plaintiff,

       – against –

SOLERA CAPITAL LLC and MOLLY ASHBY, jointly and severally,

                  Defendants.

**OPINION AND ORDER**
18 Civ 1769 (ER)

Ramos, D.J.:

Plaintiff Jane Doe brought this action against Defendants Solera Capital LLC ("Solera") and Molly Ashby ("Ashby"), alleging employment discrimination, hostile work environment, retaliation, and failure to pay overtime. Compl., Doc. 1. On July 19, 2018, Doe moved for a protective order allowing her to continue to proceed anonymously, Pl.'s Mot. Prot. Order, Doc. 27, which this court denied on March 31, 2019 (the "March Order"), *Doe v. Solera Capital LLC*, No. 18 Civ. 1769 (ER), 2019 WL 1437520, at *4–8 (S.D.N.Y. Mar. 31, 2019). The Court assumes familiarity with the facts and holdings contained in that opinion.

On April 12, 2019, Doe filed this motion for reconsideration pursuant to Local Civil Rule 6.3, arguing that clear error and newly available evidence warrant a different result on her motion for protective order. Pl.'s Mem. Supp. Recons., Doc. 55 (hereinafter "Pl.'s Mem."). For the reasons set forth below, Doe's motion to reconsider is DENIED.

**I.      BACKGROUND**

In February 2015, Jane Doe, a victim of domestic violence, began her employment with Solera. Compl. ¶¶ 4–5; Pl.'s First Aff. ¶ 7, Feb. 26, 2018, Doc. 41-2 (hereinafter "Feb. Aff."). Solera hired Doe through the firm's diversity outreach program and in conjunction with a

domestic violence shelter.  Compl. ¶ 4.  In December 2015, Doe was terminated after being informed that her position had become "redundant," *id.* ¶ 133, and on February 27, 2018, Doe initiated the instant action anonymously.

Doe alleges that Ashby, Solera's chief executive officer, subjected her to unequal treatment because of her race, *id.* ¶¶ 59, 90, 124, and her status as a domestic violence victim, *id.* ¶¶ 114–121.  She further claims that Ashby created a hostile work environment, *id.* ¶¶ 124, 183, and retaliated against her, *id.* ¶¶ 19, 124–143.  Finally, she alleges that Solera failed to provide her overtime pay, *id.* ¶ 176.

In June 2018, this Court instructed Doe to justify her need to proceed anonymously, and shortly thereafter Doe filed a motion for protective order that would allow her to do so.  In support of her motion, Doe relied largely on her experience as a domestic violence victim and its effect on her physical and mental wellbeing.  In short, Doe was rescued from an abusive household in 2014 by a support organization that placed her in a safe house.  Feb. Aff. ¶¶ 2–4.  Doe's husband then repeatedly threatened her family in an attempt to elicit information about Doe's whereabouts.  *Id.* ¶ 5.  After he successfully did so in January 2015, Doe transferred to a different safe house, registered under a pseudonym, *Id.* ¶ 6, and legally changed her name, i*d.* ¶¶ 8–9.  According to Doe, her former husband continues to look for her and has recently made death threats to her family.  Pl.'s Second Aff. ¶¶ 5–7, Aug. 29, 2018, Doc. 41-1 (hereinafter "Aug. Aff.").

In the underlying motion, Doe argued, based on her circumstances, that anonymity was warranted because:  (1) notwithstanding her name change, disclosure would expose her to risk of discovery by her former husband and thus risk of future life-threatening harm, Pl.'s Mem. Supp. Recons. at 1; Aug. Aff. ¶¶ 9–10, and (2) her fear of her former husband and the post-traumatic

stress disorder from which she suffers would prevent her from pursuing this suit if her name were disclosed, *id.* at 9–18.  Thus, Doe argued, she should be able to proceed anonymously so as to avoid arriving at an impasse between vindicating her rights and preserving her mental and possibly even physical wellbeing.

On March 31, 2019, after considering extensive briefing from both parties and two affidavits submitted by Doe, this Court denied her request.  2019 WL 1437520, at *4–8.  Doe subsequently filed this motion.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

Courts act with discretion when deciding whether to grant or deny a motion to reconsider pursuant to Local Civil Rule 6.3.  *See, e.g.*, *Henderson v. Metropolitan Bank & Trust Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (quoting *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).  In exercising that discretion, courts must be particularly mindful of the importance of finality and the conservation of judicial resources.  *Id.*; *See also Bradshaw v. City of New York,* No. 15 Civ. 4638 (ER), 2018 U.S. Dist. LEXIS 66999, at *2–3 (S.D.N.Y. Apr. 19, 2018).  Accordingly, courts must ensure that parties do not misuse the motion to relitigate prior issues, present new theories, "or otherwise tak[e] a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *See also Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (cannot relitigate).

To this end, reconsideration of a court's prior order is warranted only where the court has overlooked matters or controlling decisions which were before it on the underlying motion and might have reasonably altered the outcome, *Bradshaw*, 2018 U.S. Dist. LEXIS 66999, at *2, or when necessary to address an intervening change in controlling law, newly available evidence,

clear error, or manifest injustice, *Henderson*, 502 F. Supp. 3d at 376.  This Court emphasizes, as it has in the past, that because "a motion for reconsideration is not a substitute for appeal," an argument that the court misapplied controlling law is impermissible at this stage.  *Bradshaw*, 2018 U.S. Dist. LEXIS 66999, at *4 (internal quotations and citations omitted); *See also Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 609 (S.D.N.Y. 2012) (same).

### B. Motion for Protective Order to Proceed Anonymously

As a general rule, courts presume that any given action "must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1); *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties.").  Behind this presumption is a fundamental belief that the public has a right to know who is using the courts and for what general purpose.  *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 189 (2d Cir. 2008).  Where the suit involves a defendant's specific actions or a particular incident, open proceedings also further the judiciary's interest in a fair and accurate adjudication.  *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006).  Moreover, in civil cases involving potentially damaging allegations about a defendant's conduct, "basic fairness" requires that plaintiffs disclose their real names.  *Mateer v. Ross, Suchoff, Egert, Hankin Maidenbaum & Mazel, P.C.*, 96 Civ. 175 (LAP), 1997 WL 171011, at *6 (S.D.N.Y. Apr. 10, 1997).

However, in certain "extraordinary" circumstances, *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 351 (E.D.N.Y. 2013), particularly those that implicate serious individual privacy concerns, *Doe v. City of New York*, 201 F.R.D. 100, 101 (S.D.N.Y. 2001), courts may, at their discretion, permit a litigant to proceed anonymously.  In *Sealed Plaintiff*, the Second Circuit set out the standard for determining whether the given circumstances warrant such an exception, holding that "the plaintiff's interest in anonymity must be balanced against both the public

interest in disclosure and any prejudice to the defendant." 537 F.3d at 189. The Second Circuit suggested that courts look at ten non-exhaustive factors to assess that balance:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
>
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his or her age;
>
> (5) whether the suit is challenging the actions of the government or that of private parties;
>
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
>
> (7) whether the plaintiff's identity has thus far been kept confidential;
>
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity;
>
> (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
>
> (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (internal alterations, citations, and quotation marks omitted). Although the ten *Sealed Plaintiff* factors are highly instructive, courts are not required to consider any or all of them, nor must they use any particular approach, so long as they balance the relevant interests at stake when reaching a conclusion. *Id.* at 191 n.4.

## III. DISCUSSION

Doe makes two main arguments in support of her motion. First, she claims that newly available evidence corroborates her actual and potential mental injuries and, as a result, tilts the balance of the *Sealed Plaintiff* framework in her favor. Second, she argues that the Court committed clear error in its analysis of the first, second, third, fourth, and fifth factors, as well as in its overall application of the *Sealed Plaintiff* framework. Assessing each argument in turn, this Court is left unconvinced on all grounds.

### A. New Evidence

Doe first seeks reconsideration on the basis of new evidence relating to the second *Sealed Plaintiff* factor.[1] Although the Court previously weighed that factor in Doe's favor based on apparent risks to Doe's physical safety and mental health, it also declined to speculate about the "nature, level, or intensity" of her purported mental injuries in the absence of medical corroboration. 2019 WL 1437520, at *4. Doe argues that two new affidavits from her treating therapist, Dr. Allison Ross, corroborate her mental injuries and the relevant risk of psychological harm. In turn, Doe suggests, this removes the issue of speculation and significantly bolsters the overall weight of the second factor, thus shifting the balance of the test as a whole and demanding a different outcome. Pl.'s Mem. 3–4; Pl.'s Reply 1–3, 4–7. After evaluating the propriety of Doe's evidentiary submissions at this stage and properly framing the scope of the inquiry, the Court finds no grounds upon which it should reverse the holding of its March Order.

---

[1] "(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties." 537 F.3d at 190 (internal alterations and citations omitted).

### 1. Procedure on Motion to Reconsider

In an effort to contest Doe's submissions, Solera argues that both affidavits are procedurally improper because, contrary to Local Rule 6.3, Doe failed to seek leave from this Court before filing either affidavit.  Def.'s Mem. Opp'n Recons. 3–4, Doc. 59 (hereinafter "Def.'s Mem."); Def.'s Sur-Reply Mem. Opp'n. Recons. 6, Doc. 70 (hereinafter "Def.'s Sur-Reply"); *see also* Local R. 6.3 ("No affidavits shall be filed by any party unless directed by the Court.").  With respect to Dr. Ross's first affidavit, Doe clearly made such in her motion to file under seal.  Pl.'s Mot. File Aff. Supp. Recons., Doc. 56 ("Plaintiff hereby moves this Court for leave to file under seal . . . the [attached] Affidavit of Dr. Allison Ross . . . .").  Turning to Dr. Ross's second affidavit, Doe, at the very least, requested the Court's permission to file the affidavit in the memorandum to which it was attached.  Pl.'s Reply 7.  For these purposes, the Court considers those steps procedurally sufficient.

Solera also argues that the second Ross affidavit constitutes an impermissible assertion of new factual material in a reply memorandum.  Def.'s Sur-Reply 3–6.  To the extent that Solera accurately frames the facts at issue, the Court finds that any harm caused by Doe's so-called "ambush litigation," *id.* at 5, has been sufficiently mitigated by Solera's ability to file a sur-reply responding to the contents of the affidavit and its accompanying memorandum.

### 2. Supplemental or Previously Available Evidence

Solera further contests, and this Court questions, the extent to which the information in either affidavit constitutes *newly available* evidence for these purposes.  Def.'s Mem. 4–7; Def.'s Sur-Reply 6–7.  Where a movant argues for reconsideration on the basis of newly available evidence, a court's inquiry is limited to information that was not previously before the court and could not have been before it at that time.  *Chamberlin v. Principi*, No. 02 Civ. 8357 (NRB),

7

2006 WL 647785, at *2 (S.D.N.Y. Mar. 15, 2006). Thus, the Court will not consider portions of either affidavit that effectively restate old facts or that present new facts of which Doe was or reasonably should have been aware prior to the March Order.

Beginning with Dr. Ross's first affidavit, the Court cannot avoid the conclusion that most of the information contained therein is not newly available evidence. The affidavit includes detailed background on Doe's abuse, 1st Ross Aff. ¶¶ 7, 8, 12–14, 16–29, Doc. 56, Ex. A, its effect on her mental wellbeing, *id.* ¶¶ 10–12, 15, 31–33, her alleged mistreatment as Solera, *id.* ¶¶ 34–35, 43–44, and the distress purportedly caused by this Court's request for Doe to justify her anonymous status, *id.* ¶¶ 47–54. To a large extent, these statements merely reiterate the information that Doe already provided in the two affidavits that she submitted in support of the underlying motion for protective order. *See* Feb. Aff. ¶¶ 2–6, 8–9; Aug. Aff. ¶¶ 5–7, 9–18.

Moreover, even where Dr. Ross's descriptions of Doe's abuse and subsequent mental state provide new information about her life and wellbeing, that information was or reasonably should have been known to Doe—and made available to the Court—prior to the March Order. The Court will thus not consider statements from the first Ross affidavit that describe Doe's life or wellbeing prior to March 31, 2019. *See, e.g.*, *Henderson*, 502 F. Supp. 2d at 376 (quoting *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469 (RPP), 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005)); *see also Tropical Sails Corp. v. Yext*, No. 14 Civ. 7582 (JFK), 2016 WL 2733427, at *2 (S.D.N.Y. 2016) (denying new evidence not indicated as previously unavailable).

Turning to the second Ross affidavit, the Court finds that the majority of the statements therein only reiterate information previously made available to this Court. ¶¶ 1–3, 5, 7, Doc. 62-1 (describing general aspects of Doe's background and mental state). The portions of Ross's

second affidavit pertaining to Doe's "suicidal thoughts and ideations," *id.* ¶¶ 4, 6—the only statements that could be construed as new evidence—contain information that Doe could have submitted with either the underlying motion for protective order or with Dr. Ross's initial affidavit. *See Tropical Sails Corp.*, 2016 WL 2733427, at *2. Doe may not cure that omission by providing the information at this late stage. *Id.*

Doe attempts to avoid this conclusion by highlighting the temporal difference between the two affidavits, which purportedly shows the "deterioration" of Doe's condition over time. Pl.'s Resp. Letter 3, Doc. 65. The substance of the affidavit, however, hardly explains that evolution,[2] and this Court declines to give it any weight. Thus, the Court will not consider Dr. Ross's second affidavit, as it does not properly constitute newly available evidence.

### 3. Evidence of Post-Order Harm

Within Dr. Ross's first affidavit, there are statements pertaining to the effect of the March Order on Doe's mental wellbeing. ¶¶ 55–58, 61. By their very nature, these statements constitute newly available evidence and, therefore, warrant reconsideration of the March Order. In determining the effect of this new evidence, however, the Court takes caution to avoid reassessing aspects of its prior decision not within the limited scope of this inquiry. *See Doe v. Smith*, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999) ("Because the newly provided evidence pertains only to one factor, the court will not repeat [the full] factor analysis.").

Here, Doe's evidence and argument relate to the second *Sealed Plaintiff* factor. Because the Court previously found that factor weighed in favor anonymity, 2019 WL 1437520, at *4–5, the only question is whether the March Order's effect on Doe's mental state lends factor two

---

[2] While Dr. Ross draws a facial distinction between her first and second affidavits within the latter report, ¶ 1 (noting that the "supplemental affidavit [is provided] to amplify Ms. Doe's psychological situation since [the] prior affidavit."), nothing in the statements that follow explain what changed during the interim period or how that period was relevant to Dr. Ross's analysis.

enough additional weight to overcome the countervailing interests. After accepting Dr. Ross's assessment of the post-Order harm as accurate and giving due consideration to Doe's background, the Court cannot draw such a conclusion.

Doe's argument on this issue relies almost exclusively upon a single case: *Doe v. Smith*. In *Smith*, the court was asked to reconsider its decision not to allow the plaintiff to proceed anonymously after determining that she had not demonstrated sufficiently extraordinary circumstances. 105 F. Supp. 2d at 41–44. In support of her motion, the plaintiff submitted new evidence "consisting of descriptions and evaluations of plaintiff's reaction to [the] court's decision denying her request . . . ." *Id.* at 43. Taking that evidence into consideration—particularly the purported emotional and psychological harm caused and its likely effect on her ability to proceed with the litigation—the court reversed its prior decision and allowed the plaintiff to proceed anonymously. *Id.* at 44.

Doe's argument on this issue assumes that this Court's refusal to speculate about the intensity of her mental injury resulted, as in *Smith*, in the Court assigning the second factor diminished relative weight. That assumption is misguided. After the Court declined to speculate, it went on to describe at length the risk of physical and mental harm from Doe's former husband that she sought to avoid and found, on the basis of that risk, that the second factor weighed in Doe's favor. 2019 WL 1437520, at *5. Doe's new evidence might reassure the Court that the second factor supports Doe's position. However, because the Court did not initially diminish the weight of that factor, the evidence does little to bolster its significance, nor does it diminish the weight of the factors that favor disclosure.

Doe also suggests that, based on the striking similarity between the situation in *Smith* and that at issue here, "a similar result is warranted." Pl.'s Mem. 3–4. Even if the Court were to

accept that Doe's case is "on all fours" with *Smith*, *id.* at 4, it does not follow that this Court must or even should draw the same conclusions. *Smith* is not controlling precedent. As a trial-level decision from a different district, it would have only been persuasive in this Court at the time it was issued, and the emergence of intervening law over the last two decades has only diminished its weight. Of particular importance is *Sealed Plaintiff* itself, which unified the once-diffuse set of standards applied to motions to proceed anonymously into a single framework. 537 F.3d at 189–91. Because this Court was operating within that framework, the analysis employed in the March Order is distinct from that employed in *Smith*.

Given these differences, *Smith* is at most instructive of how courts may proceed in similar circumstances. In heeding that instruction, this Court exercises its "power and discretion" over Doe's motion, *Smith*, 105 F. Supp. 2d at 43, assesses Doe's newly submitted evidence under the proper *Sealed Plaintiff* balancing test, and ultimately finds her argument based on that evidence unavailing. That a neighboring court applying a different analysis to a similar set of facts came to the opposite result neither commands nor even strongly suggests that such a result is warranted here.

**B. Clear Error**

Doe's second set of arguments allege that the Court committed clear error with respect to the first, second, third, fourth, and fifth factors, as well as in its general application of the *Sealed Plaintiff* framework. For the reasons explained below, the Court will not reconsider the March Order on any of these grounds.

<u>1. Factor One</u>

Doe argues that the Court committed clear error by finding that the first *Sealed Plaintiff* factor, whether the litigation involves matters of a highly sensitive and personal nature, 537 F.3d

11

at 190, favors disclosure.  Pl.'s Mem. 4–5.  In assessing that factor, the Court determined that, unlike Doe's experience as a domestic violence victim, the subject matter of this litigation was not highly sensitive or personal in nature.  2019 WL 1437520, at *4.  In Doe's view, however, her status as a domestic violence victim is intertwined with the issues of this case because her complaint includes claims of discrimination on the basis of that status.  Pl.'s Mem. 4–5.  Thus, Doe contends, "there [is] no distinction" between her sensitive and personal experience as a domestic violence victim and the subject matter of this litigation.  *Id.* at 5.  The Court disagrees.

First, Doe's argument is improper at this stage, as theories not raised on the underlying motion are inappropriate on a motion to reconsider.  *Bradshaw*, 2018 U.S. Dist. LEXIS 66999, at *2.  While Doe previously raised the alleged instance of domestic violence-based discrimination, Compl. ¶¶ 113–23; Pl.'s Mem. Supp. Prot. Order 16, Doc. 29, she did not argue that it was in any way relevant to the Court's analysis of factor one.  Rather, Doe twice claimed that factor one weighed in her favor because of her desire for privacy in light of her prior experience.  Mem. Supp. Prot. Order 14; Pl.'s Reply Mem. Supp. Prot. Order 11, Doc. 41.  It was not until filing the instant motion that Doe linked the domestic violence-related claims in her complaint to that factor, at which point it amounted to an improper attempt to relitigate previously resolved issues under a new theory.  *See Analytical Surveys, Inc.*, 684 F.3d at 52.

Moreover, even after considering the argument, the Court does not see how its weighing of the first factor amounted to clear error.  The burden fell on Doe, as movant, to sufficiently demonstrate the grounds warranting reconsideration.  *See Sikhs for Justice*, 893 F. Supp. 2d at 605.  Doe has made it evident that she disagrees with this Court's disposition of the first factor, but that does not render it clear error for the purpose of reconsideration.  *Id.* at 607 ("disagreement with the Court's previous opinion is an insufficient basis for a motion for

reconsideration." (internal citation and quotation marks omitted)); *Bradshaw*, 2018 U.S. Dist. LEXIS 66999, at *4 ("the proper vehicle for . . . disagreement with [a court's] decision is appeal."). Without more, Doe's clear error argument as to factor one falls short.

Doe also claims that the Court overlooked available evidence pertaining to domestic violence-related discrimination when assessing the first factor. Pl.'s Reply Mem. Supp. Recons. 9–11, Doc. 62 (hereinafter "Pl.'s Reply"). However, Doe fails to explain, beyond a restatement of her allegations and a conclusory remark as to their effect on factor one, how that information, if considered, would have altered the Court's ultimate conclusion. *See* Pl.'s Reply 10–11. Consequently, Doe has not provided a basis for reconsideration of the first factor analysis. *See, e.g.*, *Shrader*, 70 F.3d at 257 (noting that overlooked matters only warrant reconsideration when they "might reasonably be expected to alter the conclusion reached by the court").

2. "Inapplicable" Factors

Next, Doe contends that the Court's weighing of factors three, four, and five amounts to clear error because, in her view, all three are inapplicable to her situation and thus should have been weighed neutrally, or not at all, rather than in favor of disclosure.[3] Pl.'s Mem. 6–9.

As applied to factors three and four, Doe's argument is, at least, descriptively accurate. As this Court found, the injury litigated against here would not result from disclosure, 2019 WL 1437520, at *5–6, and Doe is not a minor, *id.* at *6. Moreover, Doe is correct in stating that the Court found both of these factors to weigh against proceeding anonymously. *Id.* at *5–6.

---

[3] The relevant factors are: "(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure . . . ; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of [her] age; [and] (5) whether the suit is challenging the actions of the government or that of private parties." *Sealed Plaintiff*, 537 F.3d at 190 (internal alterations, citations and quotation marks omitted).

13

However, Doe fails to explain how the facts of this case or controlling authority render that determination clear error.

The *Sealed Plaintiff* framework gives considerable deference to courts in determining how to properly balance the competing interests at stake. 537 F.3d at 191 n.4. When analyzing and applying that framework, this Court determined that, given the existing presumption in favor of disclosure, rather than a neutral status quo ante, it would weigh all factors not directly supporting anonymity as upholding that presumption. Doe may disagree with the Court's determination in this respect, but lacking any suggestion that controlling precedent demands otherwise, her argument, at best, amounts to a claim of misapplication of law, not clear error. Thus, the Court will not reconsider its determination that factors three and four favor disclosure. *Bradshaw*, 2018 U.S. Dist. LEXIS 66999, at *4. More to the point, even if the Court had determined that factors three and four were neutral, it would still have found, on balance, that anonymous treatment was not appropriate on the facts presented.

With respect to the fifth factor, Doe asserts that only actions challenging the government produce a heightened interest disclosure, making that factor inapplicable in Doe's case. Pl.'s Mem. 9 ("Where a suit is challenging the actions of the government there is a heightened interest in public disclosure [that is not applicable here]. . . . [T]hus this factor should be neutral."). In making this argument, however, Doe misstates the relevant standard.

As this Court explained in the March Order, suits against the government create strong interests in anonymity while private civil suits create strong interests in open proceedings given that such suits implicate "legal and social norms." 2019 WL 1437520, at *6 (first citing *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003), and then quoting *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006)). Doe's case falling clearly within the latter category, this

14

Court weighed the fifth factor in favor of disclosure. *Id*. After properly stating the standard, nothing in Doe's argument suggests that this application or result were erroneous.

### 3. Sufficiency of Third-Party Harm

Next, Doe argues that the Court's finding of a legitimate risk of harm to Doe from a third party was sufficient to allow her to proceed anonymously and that, notwithstanding the other *Sealed Plaintiff* factors, the Court erred by not so holding. Pl.'s Mem. 5–6 (citing *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996)).

Doe's argument hinges on her interpretation of *Doe v. Shakur*. In her view, when that court found risk of harm from third parties to be a "legitimate basis for allowing [a plaintiff] to proceed anonymously," *Shakur*, 164 F.R.D. at 362, it established such risks as "independent and sufficient grounds" for anonymity. Pl.'s Mem. 5. This Court seriously doubts that when the *Shakur* court used the phrase "legitimate basis," it did so in the unusual manner that Doe suggests. *See Legitimate*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Genuine; valid"); *Basis*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[A]n underlying fact or condition; a *foundation or starting point*" (emphasis added)).

Regardless, the interpretation that Doe urges would, if adopted, undermine the balancing inquiry required by *Sealed Plaintiff* by making one issue dispositive, irrespective of the countervailing interests. Because Doe's clear error argument is unsupported by any reasonable interpretation of the relevant law, the Court declines reconsideration on this basis.

### 4. Weight of Public Access

Arguing that the Court applied the wrong legal standard, Pl.'s Mem. 9–10, Doe objects to a single sentence in the March Order in which the Court suggested that the presumption in favor of disclosure is "intended to further the *fundamental* right of public access to the courts." 2019

WL 1437520, at *2 (emphasis added) (citing *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).  According to Doe, in a later iteration of the cited case, the Second Circuit provided a broader statement of the weight of public access that this Court overlooked.  Pl.'s Mem. 9.  However, the Court relied on the case at issue strictly as a source of background information about public access to the courts more generally.  Whether that access was "fundamental" played no role in the Court's analysis, and thus Doe's concerns do not warrant reconsideration.

5. Balancing Under *Sealed Plaintiff*

Finally, Doe claims that it was clear error for the Court to tally, rather than weigh, the *Sealed Plaintiff* factors.  Pl.'s Mem. 1–2.  The Court rejects this argument on two grounds.

First, Doe misinterprets the Court's analysis.  The Court did explain that only two factors weighed in favor of anonymity while eight weighed in favor of disclosure.  However, its final conclusion—that "Doe's interest in anonymity . . . does not outweigh" the countervailing interests—was the product of reasoned balancing, not the simple observation that eight is greater than two.  2019 WL 1437520, at *8.

Second, it would not have been erroneous for the Court to rely on a final tally after balancing the competing interests when assessing each individual factor.  *Sealed Plaintiff* makes clear that, while courts must balance the three competing interests, they are not bound to any specific approach in doing so.  537 F.3d at 191 n.4.  Thus, even if the Court were to accept Doe's interpretation of the March Order, she would not have sufficiently demonstrated the occurrence of clear error.  Consequently, the Court will not reconsider its overall application of the *Sealed Plaintiff* framework.

## IV. CONCLUSION

For the reasons set forth above, Doe's motion to reconsider this Court's order, dated March 31, 2019, denying her motion for a protective order to continue to proceed anonymously is DENIED.  That order shall remain in effect, and Plaintiff is directed to file her Third Amended Complaint under her legally changed name within seven days of the filing of this order.  The parties are directed to appear for a status conference on November 22, 2019 at 4:00 PM.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 54.

It is SO ORDERED.

Dated:   October 23, 2019
         New York, New York

_____
Edgardo Ramos, U.S.D.J.